IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs January 16, 2002

**STATE OF TENNESSEE v. ALFIO ORLANDO LEWIS**

**Appeal from the Criminal Court for Davidson County**
**No. 2000-A-121    Cheryl Blackburn, Judge**

_____

**No. M2000-03160-CCA-MR3-CD - Filed March 6, 2002**

_____

The Defendant, Alfio Orlando Lewis, was convicted by a Davidson County jury of two counts of attempted second degree murder and two counts of aggravated assault. After a sentencing hearing, the trial court merged the two aggravated assault convictions into the two attempted second degree murder convictions. The Defendant was sentenced to 12 years to be served consecutively in the Department of Correction on each of the attempted second degree murder convictions for an effective sentence of 24 years. On appeal, the Defendant contends that (1) the evidence is insufficient to support the convictions, (2) the trial court erroneously prevented him from testifying that a fellow inmate confessed to the crime, and (3) the trial court improperly sentenced the Defendant. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which JERRY L. SMITH and THOMAS T. WOODALL, JJ., joined.

David A. Collins, Nashville, Tennessee, for the appellant, Alfio Orlando Lewis.

Paul G. Summers, Attorney General and Reporter; Christine M. Lapps, Assistant Attorney General; Victor S. Johnson, District Attorney General; and Bret Gunn, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On the evening of December 10, 1998, the Defendant entered the South Side Market and Deli on Murfreesboro Road in Nashville and purchased a frozen pizza. The South Side Market and Deli is owned and operated by two brothers, Mohammed and Sultan Hussaini. The Defendant was informed by Mohammed Hussaini that he could not use the store's microwave oven to heat the pizza because it would take between fifteen and twenty minutes and might overload the electrical circuits in the store. The Defendant became angry and a spirited argument ensued. Sultan Hussaini left the

store office to try to get his brother and the Defendant to calm down. During the argument, both Mohammed Hussaini and the Defendant cursed at each other. The Defendant also threatened to return, "blow this place up," and shoot the brothers.

Later that evening, the Hussaini brothers locked the store and got into their car to go home. As Sultan was starting the car, he noticed two black males coming around the corner of the store. One man was carrying a shotgun while the other was armed with a pistol. The two men began firing at the Hussaini brothers who were seated in their car. The Hussaini brothers were also armed with pistols and returned fire. The assailants fled the seen, but both brothers recognized the Defendant as the man with the pistol. The Hussaini brothers called the police, described the Defendant, and provided the police with the store surveillance video showing the Defendant in the store earlier in the evening. Both brothers identified the Defendant two weeks later in a photo lineup.

While admitting that he argued with the Hussaini brothers on the day of the incident, the Defendant contended at trial that he was with his girlfriend and his cousin at the time of the shooting and was not one of the assailants. The Defendant testified that on the evening in question, he took his mother to his aunt's house and then drove around with his girlfriend and his cousin. The Defendant's mother and the Defendant both testified that he returned to his aunt's house every hour to see if his mother was ready to go home. The Defendant's girlfriend testified that she was with him all evening and that he did not return to the store to shoot the Hussaini brothers. The Defendant's girlfriend also stated that she saw no firearms on the Defendant's person or in his car all evening.

## SUFFICIENCY

The Defendant first contends that the evidence presented at trial is insufficient for a reasonable jury to find him guilty beyond a reasonable doubt. Specifically, the Defendant argues that inconsistencies in the testimony of the two Hussaini brothers preclude a finding of guilt beyond a reasonable doubt. Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." Evidence is sufficient if, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Smith, 24 S.W.3d 274, 278 (Tenn. 2000). In addition, because conviction by a trier of fact destroys the presumption of innocence and imposes a presumption of guilt, a convicted criminal defendant bears the burden of showing that the evidence was insufficient. See McBee v. State, 372 S.W.2d 173, 176 (Tenn. 1963); see also State v. Buggs, 995 S.W.2d 102, 105-06 (Tenn. 1999); State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

In its review of the evidence, an appellate court must afford the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." Tuggle, 639 S.W.2d at 914; see also Smith, 24 S.W.3d at 279. The court may not "re-weigh or re-evaluate the evidence" in the record below. Evans, 838 S.W.2d at 191; see also Buggs,

995 S.W.2d at 105. Likewise, should the reviewing court find particular conflicts in the trial testimony, the court must resolve them in favor of the jury verdict or trial court judgment. See Tuggle, 639 S.W.2d at 914. All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact, not the appellate courts. See State v. Morris, 24 S.W.3d 788, 795 (Tenn. 2000); State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987).

Second degree murder is a knowing killing of another. See Tenn. Code Ann. § 39-13-210 (a)(1). One attempts to commit second degree murder when, with the intent to commit second degree murder, one takes a "substantial step toward the commission of the offense." Tenn. Code Ann. § 39-12-101 (a)(3).

The Defendant argued with the two store owners, and threatened to return and shoot them. Later that evening, the proof established that the Defendant returned with an accomplice and opened fire on the brothers as they sat in their car. Bullet holes were found in the victims' car and bullet casings were found in the parking lot where the Defendant and his accomplice stood. Clearly, the proof established that the Defendant's actions were a knowing attempt to take the life of the Huissaini brothers.

The Defendant maintains that the evidence of identification is insufficient to establish guilt due to inconsistencies in the testimony of the two victims. Both brothers testified that they recognized the Defendant while he was shooting the pistol at them as the individual with whom they argued earlier in the evening. Furthermore, both brothers separately identified the Defendant from a photographic lineup two weeks after the incident. Any questions involving the credibility of the witnesses or the weight and value to be given the evidence, were resolved by the trier of fact in favor of the State. See Morris, 24 S.W.3d at 795; Pappas, 754 S.W.2d at 623.

Accordingly, we conclude that there is sufficient evidence from which a rational jury could find the Defendant guilty beyond a reasonable doubt of attempted second degree murder. This issue is without merit.

## ALLEGED HEARSAY CONFESSION

The Defendant also contends that the trial court erred in preventing him from testifying concerning a statement made to the Defendant by another inmate in which the inmate stated that it was he and not the Defendant who was involved in the shooting. The Defendant argues that the trial court should have allowed him to testify concerning this hearsay because the declaring inmate was unavailable. Rule 804 of the Tennessee Rules of Evidence, regarding the hearsay exceptions applicable when the declarant is unavailable, provides as follows:

> (b) Hearsay Exceptions.--The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
>
>     . . . .

(3) Statement Against Interest.--A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless believing it to be true.

In Breeden v. Independent Fire Ins. Co., 530 S.W.2d 769 (Tenn.1975), the court set out the basic rule, later codified as Rule 804, regarding the declaration against penal interest exception to the hearsay rule:

From this day forward, extra-judicial declarations against pecuniary or penal interests, where material, are admissible where the declarant is dead; beyond the jurisdiction of the court and the reach of its processes; is suffering from such infirmities of body or mind as to preclude his appearance as a witness, either by personal presence or by deposition; or where he is present in court and refuses to testify on the ground of self-incrimination.

Id. at 775; see also, State v. Cureton 38 S.W.3d 64, 79 (Tenn. Crim. App. 2000).

The Defendant's argument that the testimony concerning the alleged confession was admissible as a declaration against penal interest is without merit. The defendant made no showing that Johnson was "unavailable" to testify, as is required by Rule 804 before such a statement can be admitted as an exception to the hearsay rule. The Defendant made no effort to subpeona the inmate who made the confession. There was no showing that any attempt had been made to locate the inmate. Further, the inmate did not appear in court and assert his Fifth Amendment privilege against self-incrimination. Thus, the testimony regarding the alleged confession was hearsay which was not admissible pursuant to an exception to the hearsay rule. This issue is without merit.

## SENTENCING

Finally, the Defendant argues that the trial court erred in sentencing him to the maximum sentence of 12 years on each count and by imposing consecutive sentences. When an accused challenges the length, range, or manner of service of a sentence, this Court has a duty to conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

When conducting a de novo review of a sentence, this Court must consider: (a) the evidence, if any, received at the trial and sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) any statutory mitigating or enhancement factors; (f) any statement made by the defendant regarding sentencing; and (g) the potential or lack of potential for rehabilitation or treatment. See Tenn. Code Ann. §§ 40-35-102, -103, -210; State v. Brewer, 875

S.W.2d 298, 302 (Tenn. Crim. App. 1993); State v. Thomas, 755 S.W.2d 838, 844 (Tenn. Crim. App. 1988).

If our review reflects that the trial court followed the statutory sentencing procedure, that the court imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and that the trial court's findings of fact are adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result. State v. Pike, 978 S.W.2d 904, 926-27 (Tenn. 1998); State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

The presentence report reflects that at the time of sentencing the Defendant was twenty-one years old and unmarried. The Defendant had previous convictions for aggravated assault, assault, criminal trespass, and disorderly conduct, in addition to an extensive juvenile record. The Defendant's statement contained within the presentence report simply asserts that he is not guilty of the charges levied against him.

In sentencing the Defendant to the maximum sentence on each count, the trial court applied the following five enhancement factors: (1) the defendant had a previous history of criminal behavior in addition to that necessary to establish the appropriate range; (2) the defendant was a leader in the commission of an offense involving two or more criminal actors; (3) the defendant had a previous history of unwillingness to comply with the conditions of a sentence involving release in the community; (4) the defendant possessed or employed a firearm during the commission of the offense; and (5) the defendant was adjudicated to have committed a delinquent act or acts as a juvenile that would constitute a felony if committed by an adult. See Tenn. Code Ann. § 40-35-114 (1), (2), (8), (9), and (20).

The Defendant takes issue only with the trial court's finding that he was a leader in the commission of a criminal offense involving two or more criminal actors. The trial court specifically found that:

> . . . Mr. Lewis is the one that was extremely agitated about the lack of being able to use a microwave oven. He threatens to either blow up the place, come back, and then as the victims are leaving their place of business, he, in fact, appears at the corner along with someone who is acting in concert. He has a shorter gun, handgun, and the accomplice has a shotgun, and they just open fire on these two people while they are sitting in a car. That clearly indicates being a leader in the commission of the offense, and I'm going to find that that does apply in this case.

We conclude that the record supports the trial court's finding that the Defendant was a leader in the commission of the offense given the Defendant's threats and his subsequent return with an accomplice to carry out those threats. Furthermore, the trial court properly sentenced the Defendant to the maximum for each count given the five applicable enhancement factors and the absence of any mitigating factors.

The Defendant also challenges the trial court's imposition of consecutive sentences. Tennessee Code Annotated section 40-35-115 states that the trial court may impose consecutive sentences upon a defendant convicted of multiple criminal offenses if it finds that a preponderance of the evidence establishes that the defendant falls into one of seven categories. In addition, the length of the sentence must be justly deserved relative to the seriousness of the offense but no greater than the Defendant deserves for the offense committed. See State v. Lane, 3 S.W.3d 456, 460 (Tenn. 1999). In ordering the Defendant's sentences to run consecutively, the trial court found that the Defendant fell into two of the categories set forth in section 40-35-115. First, the trial court found that the Defendant is a "dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high." Tenn. Code Ann. § 40-35-115 (4). In support of her conclusion, the trial judge noted the Defendant's decision to attempt to kill the two store owners simply because he was not allowed to use the microwave oven. The trial judge also stated that the fact that the Defendant "ambushed" the victims and that the Defendant was previously convicted as a juvenile of aggravated assault for attempting to shoot someone during an argument concerning the victim's mother was part of the basis of her finding.

The trial court also found that the Defendant was eligible for consecutive sentences because the presented offense was "committed while on probation." Tenn. Code Ann. § 40-35-115 (6). The record reflects that, at the time of the offense, the Defendant was on probation after previously being convicted of assault.

The trial court specifically found that the sentences imposed related to the severity of the crimes and that extended incarceration is necessary to protect the public. See State v. Wilkerson, 905 S.W.2d 933, 939 (Tenn. 1995). The trial court based this finding on the Defendant's extremely violent reactions to seemingly unimportant confrontations evidenced by the facts of the present case as well as the aggravated assault conviction as a juvenile.

We conclude that the trial court's findings are adequately supported by the record. The Defendant was properly sentenced to 12 years on each count of attempted second degree murder and was properly ordered to serve his sentences consecutively. This issue is without merit.

**CONCLUSION**

For the foregoing reasons, we conclude that the evidence is sufficient to support the convictions, the trial court properly excluded the alleged hearsay testimony, and the Defendant was properly sentenced. Accordingly, the judgment of the trial court is AFFIRMED.

_____
DAVID H. WELLES, JUDGE